MAYAGÜEZ SUGAR COMPANY, INC., Petitioner, *v.*
SUGAR BOARD OF PUERTO RICO, Respondent.

No. 13. Argued December 5, 1955.—Decided January 18, 1956.

*Fiddler, González & Nido* for petitioner. *Alejandro Romanace* for respondent.

MR. JUSTICE PÉREZ PIMENTEL delivered the opinion of the Court.

Early in July 1955, *colono* Ramón Rufino Torres notified the parties concerned, through the Sugar Board of Puerto Rico, of his intention to shift the grinding of his cane for the 1956 crop season from Central Rochelaise, owned by the Mayagüez Sugar Co., Inc., to Central Igualdad. The Mayagüez Sugar Co., Inc. objected in writing, alleging that *colono*

Torres had agreed to grind his cane up to 1956 in the Central Rochelaise by virtue of an existing contract executed before a notary on June 25, 1954.[1]

After a hearing at which the parties offered evidence, the Board dismissed the opposition to the shifting of the grinding raised by the Mayagüez Sugar Co., Inc. In its order, the Board ruled that the contract invoked by the opposing party lacked consideration to render it valid, since the obligation assumed by the Central under that contract to grind the *colono's* cane was an obligation imposed by Act No. 426 of May 13, 1951. Reconsideration of the order having been denied, the opposing party filed this petition for review.

■ Petitioner's contention is, substantially, that the crop-loan and grinding contract in question "is valid at law, contains a legitimate consideration, and is therefore enforceable," and that "its purported nullification by the respondent Board impairs illegally the obligation established under the contract, in violation of the Constitution of the Commonwealth of Puerto Rico and of the United States of America." Petitioner further contends that the Sugar Board is without power or jurisdiction to pass upon the validity of a contract between a central and a *colono* except when it contravenes the express provisions of the Sugar Act.

The contract in this case is not a crop-loan and grinding contract, as erroneously labelled by the contracting parties, but simply a grinding contract. By virtue of that contract, the *colono* agreed to deliver to the Central Rochelaise, for grinding, the cane from his small plantation of 5.94 cuerdas during the 1954–55 and 1955–56 grinding seasons. Under

---

[1] Thereafter, in a letter addressed to the Board, *colono* Torres advised that he did not know the date on which his grinding contract with the Mayagüez Sugar Co., Inc. would expire, and, therefore, that he desisted from his intention to shift the grinding in question until the expiration of the contract. However, at the hearing before the Board, Torres ratified his desire to shift the grinding of his cane to the Central Igualdad if the contract did not bar such action.

the "Third" clause the Central agrees to pay to the *colono* $3 per ton of sugar cane delivered at the *factory* as advance for cuttting and hauling. This is the only advance which the Central agrees to pay to the *colono*. Under the Sixth clause of the contract, such advances shall bear interest at 6 per centum from the date of the respective deliveries until repayment. As respects the planting and cultivation of the canes, paragraph D of the Second clause of the contract provides:

"*D*. The *Colono* shall bear, for his own account and at his own risk, the expenses incurred in the plantations from the tilling of the soil to the delivery of the cane at the Central, and shall furnish to the Central, before the first day of October of each year, a statement or account of the cane which presumably will be ripe in each month of the following season, to enable the Central to make the necessary arrangements for the cutting, transportation, and grinding of the cane, pursuant to this contract."

The Central on its part binds itself under paragraph G(*a*) of the same clause "to pay all expenses and costs of processing the cane until it is converted into centrifugal sugar." Under another clause the *colono* agrees to apply the amounts received from the Central to the administration, maintenance, cultivation, and improvement of the plantation, including the expenses for the cutting, gathering, and transportation of the cane produced. However, the only amounts received by the *colono* from the Central under this contract is the advance of $3 per ton of cane delivered at the factory, in addition, of course, to the proceeds of the liquidation of his cane. It is therefore evident that, as we said at the outset, the contract in this case is merely a contract for the grinding of cane.

 By express provision of the Sugar Act, the contract in question is void and nonexistent. Let us see.

Paragraph *E* of the Second clause provides that the *colono's* cane will be weighed at any of the factory steelyards,

the executing parties binding themselves to accept as correct the weight shown by the steelyard; that the *colono* may supervise the weighing as many times as he desires; and that the Central may deduct from the weight of the cane any fair and proportional amount, in defense of its interests, whenever the conditions and classes of the *colono's* cane are inferior to those prescribed in the contract, without it being understood that the Central binds itself to accept such cane.

In the first place, § 3 of the Sugar Act makes it the duty of the Central to grind the *colono's* cane regardless of the class or variety produced by him, and any agreement to the contrary is void. In the second place, the covenant which empowers the Central to make a proportional reduction in the weight of the cane whenever the conditions and classes of the *colono's* cane are inferior to those prescribed in the contract, is repugnant to the provisions of § 5 of the Sugar Act which fixes the *colono's* minimum share of the sugar produced from his cane, except where the Board fixes a different share for the *colono* if, in its judgment, a change in such minimum share is warranted.

In paragraph *K* of the Second clause of the contract it is stipulated that in the event of fire in the *colono's* cane, the Central shall accord it grinding preference over all other *colonos*. "The price of such cane shall be regulated by the Central according to its condition." This clause is also repugnant to the legal provisions bearing on the *colono's* minimum share of the sugar produced from his cane. It is to be noted that this clause speaks of the *price of the cane*, which evidently means that the price to be paid for such cane will be determined by the Central. Such action could deprive the *colono* of his minimum share of the proceeds of the cane guaranteed by law.

The contract contains other clauses which are repugnant to the Sugar Act. For example, the Second clause, *G(b)*, prescribes a different method from that provided in §§ 4 and 5 of the Sugar Act for determining the yield of sugar

of 96 degrees of polarization of the colono's canes and for the liquidation of such cane. In paragraph H($a$) the Central reserves the right to suspend temporarily the cutting of the cane whenever a chemical analysis of the juice reveals that it contains less than 13 percent of sucrose and is less than 80 per cent pure. In paragraph $K$ it is stipulated that the Central shall not be bound to accept unripe cane not having at least eight degrees of *Beaumé's* decimeter. Lastly, in paragraph $P$ it is stipulated that any dispute between the Central and the *colono* regarding the intent and performance of the contract shall be settled by two arbitrators, designated by each party, and in the event of disagreement between the two arbitrators each arbitrator shall designate three persons, and from among these six persons there shall be chosen an arbitrator, whose decision shall be valid. Contrary to this agreement, the Sugar Act by its § 15 empowers the Sugar Board to decide any dispute that may arise between *colonos* and centrals.

All these covenants, which are contrary to law, render the contract void and nonexistent. In this connection, § 34 of the Sugar Act provides:

"Section 34.—Any contract or practice made or introduced after this Act takes effect, which is contrary to the provisions of this statute, or of the orders, rules or regulations of the Board, shall be null and inexistent.

"Any contract or agreement between a central and one or more *colonos* by virtue of which the *colono* has agreed or may agree to accept a share of the sugar and molasses produced by his sugar cane, or a compensation for hauling and delivery, which is less than the one fixed by this Act or that may be fixed by the Board shall be null and inexistent."

In order to determine the validity of the contract under consideration, we need not resort to the provisions of the Civil Code. The Sugar Act itself, as has been seen, declares that every contract made after the Act takes effect, which is contrary to its provisions, shall be null and inexistent. We have also examined some of the clauses of the contract

whereby the *colono* seemingly agrees to accept a smaller share than that fixed by law in the sugar produced from his cane. In that case, the contract is null and inexistent under the second paragraph of § 34 *supra*.

Since the contract herein involved is null and inexistent, the order of the Board does not violate the constitutional provision bearing on contracts. *Corporación Azucarera Saurí & Subirá* v. *Sugar Board*, 77 P.R.R. 375.

Lastly, we believe that § 15 [2] of the Sugar Act vests the Board with power to settle the controversy between the petitioner and *colono* Ramón Rufino Torres. We have so decided *sub silentio* in *Corporación Azucarera Saurí & Subirá* v. *Sugar Board, supra*. See, also, the cases of *A. Roig, Sucrs.* v. *Sugar Board*, 77 P.R.R. 324; *Eastern Sugar Associates* v. *Sugar Board*, 77 P.R.R. 354; *Colonos of Santa Juana* v. *Sugar Board*, 77 P.R.R. 371.

The order of the Board will be affirmed.

Mr. Justice Sifre did not participate herein.

---

[2] This section provides:

"Section 15.—The Sugar Board shall have broad powers to hear and decide any dispute which may arise under the provisions of this Act and/or the rules and regulations or orders that the Sugar Board may prescribe, as well as any other dispute that may arise between *colonos* and *centrals*."